IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOCK HARDY,<br><br>    Plaintiff,<br><br>v.<br><br>ILLINOIS NURSES ASSOCIATION,<br><br>    Defendant. | No. 18-cv-00552<br><br>Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jock Hardy was a lobbyist for Defendant Illinois Nurses Association. Following allegations that Plaintiff had sexually harassed and battered his supervisor, Alice Johnson, Defendant fired Plaintiff. Plaintiff sued, arguing that those allegations were pretext for Defendant's racially-discriminatory basis for his termination in violation of Title VII of the Civil Rights Act of 1964. Defendant has moved for summary judgment (Dkt. 88) and argues that Plaintiff's case fails as a matter of law. For the reasons that follow, the Court grants Defendant's motion for summary judgment.

**I.     FACTUAL BACKGROUND**

Defendant is a nurses union located in Chicago that represents nurses in the private and public sectors for the purposes of collective bargaining, legislation, and policy. (Dkt. 89 at 2.) Defendant employs 17 staff members in both Chicago and Springfield, Illinois. (*Id.*) Alice Johnson began working for Defendant in 2002 after earning her law degree, and currently serves as Defendant's Executive Director. (*Id.*) As Executive Director, Johnson's responsibilities include managing Defendant's staff

and operations. (*Id.*) That includes the power to hire and fire staff, without requiring approval from the board of directors or its President. (*Id.*)

As executive director, Johnson hired Plaintiff in 2014 as a legislative representative, colloquially known as a lobbyist. (*Id.*) Plaintiff was hired as an at-will employee and was the only employee in a lobbyist position. (*Id.*) Defendant hired Plaintiff because he "knows the players" in state and local government and has a "long history of work in government and legislative issues." (Dkt. 108 ¶ 2.) In his role as lobbyist, Plaintiff tracked pending legislation and encouraged members of the legislature to consider the interest of nurses in potential legislation. (*Id.* ¶ 6.)

Defendant kept personnel records for its employees, including Plaintiff. (*Id.* ¶ 12.) Those files typically contained formal warnings about discipline, notices of suspension, and information regarding termination. (*Id.*) Johnson also kept separate notes about some employees, including Plaintiff, on her computer. (*Id.* ¶ 13.) [1]

---

[1] Plaintiff seeks to exclude Johnson's personnel notes generally, and a specific complaint memorialized in Johnson's notes from the General Counsel of the Speaker of the House that Plaintiff was being "creepy and inappropriate" with women in Springfield. (Dkt. 100 at 3; Dkt. 89-1, at 26.) Plaintiff argues that the notes are inadmissible hearsay. (*Id.* at 4.) Defendant, however, cites to Federal Rule of Evidence 803(6), which excludes records of regularly conducted activity from the rule against hearsay. (Dkt. 107 at 3.) The Seventh Circuit has held that contemporaneous notes that are "reasonably accurate" and "not contrived for the purpose of making the business look better if it is sued" may be admitted under Rule 803(6). *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 775–76 (7th Cir. 2006). Johnson testified to the required foundation to ensure that the notes are admissible under rule 803(6). (Dkt. 107 at 3; *see* Dkt. 82-1 at 6.) Moreover, the complaint that Plaintiff was "creepy and inappropriate" is admissible because it is not being asserted for its truth; rather, the note demonstrates that Johnson did in fact receive such a complaint, true or not, and shows that Plaintiff was fired in part because the complaint was made and not for racially discriminatory reasons. The complaint is also not improper character evidence under Federal Rule of Evidence 404 for the same reason: it is not offered to prove that Plaintiff has a propensity to be "creepy and inappropriate," but instead to show the complaint's effect on Defendant. Accordingly, Johnson's personnel notes are admissible, and they are properly considered at summary judgment.

Plaintiff's personnel file included only one performance review, from December 2013, prepared by Johnson and with a positive review of Defendant's performance. (*Id.* ¶ 14.)

Johnson and Plaintiff occasionally traveled together to Springfield, Illinois. On November 5, 2016, Plaintiff picked Johnson up in a rental car at her apartment in Chicago for a trip to Springfield. (*Id.* ¶ 25.) About two hours into the drive, Johnson alleges Plaintiff inappropriately touched her leg as she was drifting off to sleep in the passenger's seat. (*Id.* ¶¶ 24–26.) Plaintiff denied and continues to deny having inappropriately touched Johnson. (*Id.* ¶ 27.)

About 30 days later, Johnson emailed Defendant's outside counsel, alleging that Plaintiff inappropriately touched her. (*Id.* ¶¶ 24, 29; Dkt. 101 ¶ 42.) Johnson also informed Defendant's CFO, Richard Roche, about the inappropriate contact during the car ride with Plaintiff. (Dkt. 101 ¶ 41.) Johnson's touching allegation was not her first issue with Plaintiff: she had previously complained to Roche about Plaintiff's tardiness, responsiveness, absenteeism, failure to show up to a meeting, and failure to provide a report for a board meeting. (*Id.* ¶¶ 33–34.) In addition, Johnson received a complaint from the General Counsel of the Speaker of the House that Plaintiff was being "creepy and inappropriate" with women in Springfield. (*Id.* ¶ 36.)

In view of these complaints, Defendant's outside counsel recommended that Plaintiff's employment be terminated. (*Id.* ¶ 43.) This was consistent with Defendant's sexual harassment policy in force in 2016 and 2017, which included termination as potential punishment for an employee engaging in sexual harassment. (*Id.* ¶ 55.) Johnson advised Defendant's Board of Directors that Plaintiff's

3

employment would be terminated. (*Id.* ¶ 44–46.) And Plaintiff's employment was in fact terminated at a meeting in January 2017, where Johnson, Roche, and outside counsel informed Plaintiff that he was being terminated for various issues, including inappropriate touching. (*Id.* ¶¶ 48–49.)

After Plaintiff was terminated, Johnson filed a state-court complaint in March 2017 for battery arising from the unwanted contact during the November 2016 car ride to Springfield. (*Id.* ¶ 73.) Plaintiff filed a counterclaim against Johnson, alleging that her accusation damaged his reputation, led to his termination by INA, and led to his inability to find new employment. (*Id.* ¶ 74.) That counterclaim was, however, voluntarily dismissed. (*Id.* ¶ 75.) In September 2018, Johnson's battery claim proceeded to mandatory arbitration, resulting in a unanimous arbitral decision in Johnson's favor that awarded her both damages and costs. (*Id.* ¶ 76.)

While Johnson was pursuing her battery claim against Plaintiff, Plaintiff separately filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC), alleging that he was terminated from his employment because of his race and his age. (*Id.* ¶ 78.) Plaintiff's EEOC charge succinctly stated Plaintiff's belief that, due to his race, he was improperly subject to different terms of employment, not given a performance review, not "allowed" to participate in Defendant's "deferred investment plan," and discharged. (*Id.* ¶ 79.) The EEOC denied Plaintiff's charge and issued Plaintiff a right to sue letter. (Dkt. 1.)

Plaintiff then filed this suit in which he alleges race and age discrimination in violation of Title VII of the Civil Rights Act. (*Id.*) Plaintiff voluntarily dismissed his age discrimination claim during the pendency of a partial motion to dismiss. (Dkt.

4

53.)[2] Defendant moved for summary judgment on the remaining claim (Dkt. 88), and that fully briefed motion is now before the Court.

In opposing summary judgment, Plaintiff cites several pieces of circumstantial evidence that he contends establish Defendant's racially discriminatory motive. Plaintiff asserts he was discriminated against with regard to health insurance and 401K participation (Dkt. 101 ¶¶ 63–67); that he was the only employee forced to stay at Defendant's corporate apartment in Springfield, which was in a "sketchy neighborhood" (*Id.* ¶¶ 68–70); that Johnson treated white legislators and nurses more favorably than black legislators and nurses (Dkt. 100 at 14); and that he was fired and replaced "in favor of a Caucasian" lobbyist (*Id.* at 11).

Plaintiff also argues that Defendant's reasons for terminating his employment—violating Defendant's sexual harassment policy and poor performance—were pretextual. Plaintiff "does not believe that any touching occurred," and even "if some incidental contact occurred between the two, Plaintiff asserts that it was accidental and inadvertent, likely the result of attempts to stretch." (Dkt. 100, at 12.) Plaintiff also criticizes Defendant and Johnson for their conduct in the aftermath of the touching incident. Plaintiff contends that he was given shifting reasons for his termination and was fired without Defendant investigating or soliciting his version of events. Plaintiff also faults Johnson for riding back from Springfield with him and waiting over a month to report the inappropriate touching. (*Id.* at 12-13.)

---

[2] The partial motion to dismiss (Dkt. 16) was stricken as moot (Dkt. 53) by Judge Lee (to whom this case was then assigned) because of Plaintiff's motion to voluntarily dismiss his age discrimination claim (Dkt. 51).

## II.     LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III.    DISCUSSION

### A.     **Plaintiff Was Not Terminated Because of Racial Discrimination.**

Plaintiff contends that Defendant fired him because of his race in violation of Title VII. (Dkt. 100 at 11–15.) Defendant contests that allegation and argues that it terminated Plaintiff for performance issues and for violating its sexual harassment policy. (Dkt. 89 at 17–23.) Plaintiff's suit does not survive Defendant's motion for summary judgment because there is no genuine issue as to whether Defendant terminated plaintiff due to race.[3]

---

[3] Significant portions of both Parties' briefs focus on ancillary issues, particularly the scope of the filed EEOC charge. (Dkt. 100 at 6–10; Dkt. 107 at 7–9.) A "plaintiff suing under Title VII 'may pursue a claim not explicitly included in an EEOC complaint only if her allegations fall within the scope of the earlier charges contained in the EEOC complaint.' " *Sommerfield v. City of Chicago*, 863 F.3d 645, 648 (7th Cir. 2017) (quoting *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005)). Plaintiff alleged in his EEOC charge that he was fired because of racial discrimination. (Dkt. 89-1, Ex. Q.) Under a fair reading, Plaintiff's EEOC charge encompasses his present accusations of racial discrimination. (*See* Dkt. 101 ¶ 79 ("I

6

Under Title VII, "a plaintiff can prove discrimination either by presenting evidence of discrimination (the 'direct method' of proof), or by the *McDonnell Douglas* burden-shifting approach (the 'indirect method')." *Darchak v. City of Chicago Bd. Educ.*, 580 F.3d 622, 630 (7th Cir. 2009) (quoting *Winsley v. Cook Cnty.*, 563 F.3d 598, 604 (7th Cir. 2009)). Plaintiff expressly limits his arguments to the direct method. (Dkt. 100 at 11.).[4]

The direct method requires a court to determine whether all the relevant evidence "would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d

---

was not given a performance review or allowed to participate in the Respondent deferred investment plan . . . I was discharged . . . I believe I have discriminated because of my race, Black.").)

[4] Even if Plaintiff did not waive the indirect method, his claim would still fail. To assess a Title VII claim under the indirect method, the Court asks the "singular question," *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018), whether the evidence "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). One method a plaintiff may use to pursue his claim is the "*McDonnell Douglas* 'burden-shifting framework.' " *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019) (quoting *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017)); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case by demonstrating that he: (1) is a member of a protected class; (2) met the defendant's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who were not members of the protected class. *McDaniel*, 940 F.3d at 368. If the plaintiff proves a prima facie case, the burden shifts to the defendant "to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.* (quoting *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 719–20 (7th Cir. 2018)).

Although Plaintiff meets the first and third prima facie case factors, he fails to create an issue of material fact as to the second or fourth factors (perhaps, in part, because he declined to pursue this method of proof). Even if Plaintiff established a prima facie case under the *McDonnell Douglas* framework, Defendant articulated a legitimate, nondiscriminatory basis for his termination: the inappropriate touching of Johnson. Plaintiff's claim would thus still if fail even if he had not expressly waived the indirect method of proof.

7

at 765. Relevant evidence includes smoking-gun evidence such as a defendant's "actual admission of discriminatory intent." *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 (7th Cir. 2016) (citing *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 775 (7th Cir. 2013)). A court must also examine circumstantial evidence such as "comparative evidence showing that employees similarly situated to plaintiff other than in the protected characteristic received systematically better treatment," and "pretext evidence, where the plaintiff is qualified for and fails to receive desired treatment and the employer's stated reason for the difference is unworthy of belief." *Id.* (quoting *Piraino v. Int'l Orientation Res., Inc.*, 84 F.3d 270, 274 (7th Cir. 1996)); *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). All the "evidence belongs in a single pile and must be evaluated as a whole" to determine discriminatory intent. *Ortiz*, 834 F.3d at 766. But an "overload of irrelevant or nonprobative facts" will not add up to "relevant evidence of discriminatory intent" because "zero plus zero is zero." *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 763 (7th Cir. 2001).

After examining all the relevant evidence, the Court holds that no reasonable factfinder could conclude Plaintiff was fired because of his race. Plaintiff admits that he did not hear any racially derogatory marks made by Defendant or its employees. (Dkt. 101 ¶ 61.) Plaintiff points to several alleged pieces of circumstantial evidence, but this evidence does not paint a triable picture of discriminatory intent. Plaintiff claims Defendant discriminated against him with regards to health insurance and 401K participation but admits that he was allowed to participate as soon as he filled out the necessary paperwork. (*Id.* ¶¶ 63–67.) Plaintiff contends that he was the only person forced to stay at Defendant's corporate apartment in Springfield, which was

8

in a "sketchy neighborhood," while other employees were allowed to stay in a hotel. But it is uncontroverted that both Roche and Johnson also stayed in that apartment (Johnson stayed at the apartment during the November 2016 trip). (*Id.* ¶¶ 68–70 (Plaintiff admitting that Roche and Johnson both testified to staying in the apartment).) Plaintiff says that "color" was always an issue for Johnson and that he observed her being less comfortable with predominantly black groups than white groups and less respectful towards black legislators than white legislators. (Dkt. 100 at 14.) Plaintiff, however, presents no objective evidence to corroborate his subjective perception of Johnson's demeanor. Plaintiff also claims that he was fired and replaced "in favor of a Caucasian" (Dkt. 100, at 11), but Plaintiff admitted that Defendant did not "replace him by hiring another employee but rather retained an outside firm to handle its lobbying efforts." (Dkt. 101, ¶ 71-72.) Moreover, Plaintiff admits that he is not aware of any non-black employee who was similarly accused of inappropriate touching but disciplined differently than him. (Dkt. 101 ¶¶ 59–60.)

Plaintiff further contends that Defendant's purported reasons for terminating his employment were pretextual. (Dkt. 100 at 10.) To meet that burden, Plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions" in Defendant's rationale "that a reasonable person could find it unworthy of credence." *Coleman*, 667 F.3d at 852 (cleaned up). Central to Plaintiff's pretext argument is his contention that the inappropriate touching incident never occurred. In other words, if there is a genuine issue of fact regarding whether the touching occurred, then there is also a genuine issue of fact regarding Defendant's real reasons for firing Plaintiff.

9

For its part, Defendant asserts collateral estoppel as a legal basis to prevent Plaintiff from contesting the touching incident in this case. (Dkt. 89 at 15.)

In this case, because the collateral estoppel effect of an Illinois arbitral decision is at issue, the Court must apply the law of Illinois concerning issue preclusion. *In re Bozovic*, 2004 WL 1905355, at *3 (Bankr. N.D. Ill. Aug. 24, 2004). Under Illinois law, collateral estoppel requires that "(1) the issues decided in the prior adjudication are identical to issues presented for adjudication in the current proceeding; (2) there be a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party in the prior action." *Kalush v. Deluxe Corp.*, 171 F.3d 489, 493 (7th Cir. 1999). In Illinois, arbitration awards "have the same collateral estoppel effect as court judgments." *Bozovic*, 2004 WL 1905355, at *4.

Defendant correctly argues that all the elements for collateral estoppel are present: Johnson won her arbitration battery claim premised on the inappropriate leg touching, but Plaintiff here claims the touching never occurred and was pretext for racial discrimination; a final arbitration award was entered on October 29, 2019 (Dkt. 101, ¶ 77); and Plaintiff, who Defendant asserts estoppel against, was a party to the arbitration. Accordingly, absent another basis for finding that the doctrine should not apply, Plaintiff should be estopped to challenge the factual finding in the earlier arbitration.

Plaintiff asserts that there is indeed another basis for not finding estoppel: Defendant waived the doctrine by omitting this affirmative defense from Defendant's answer and raising estoppel for the first time in a motion for summary judgment. *See* Fed. R. Civ. P. 8(c)–(d) (Dkt. 100, at 8.) Plaintiff is correct that Defendant raises

10

collateral estoppel for the first time on summary judgment. But Defendant's use of the doctrine here does not function as an affirmative defense because it does not defeat liability. As the Seventh Circuit has explained, the "essence of an affirmative defense is that it . . . defeat[s] liability." *E.E.O.C. v. Mach Min., LLC*, 738 F.3d 171, 184 (7th Cir. 2013), *vacated and remanded on other grounds sub nom. Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480 (2015); *see Terry v. Gary Cmty. Sch. Corp.*, 2016 WL 8672691, at *5 (N.D. Ind. Feb. 26, 2016) ("An affirmative defense is one that defeats liability for all or some of a plaintiff's claims."); 5 Wright & Miller, *Federal Practice and Procedure* § 1271, at 585 (3d ed. 2004) (An affirmative defense "suggests some other reason why there is no right of recovery.").

If estopped, Plaintiff could still present other evidence of pretext to show that Defendant's true reason for terminating his employment was his race and not the touching incident. In other words, collateral estoppel as Defendant seeks to apply it here does not defeat liability—it merely prevents Plaintiff from disputing one of many potential pieces of evidence relevant to his Title VII claim. *See Perri v. Daggy*, 776 F. Supp. 1345, 1347 (N.D. Ind. 1991) (Defendants' use of collateral estoppel "to estop [Plaintiff] from denying facts determined in the criminal case" is not "an affirmative defense" because it "would not have the effect of defeating [Plaintiff's] claim in whole or in part."). Because Defendant is not using estoppel as an affirmative defense, Plaintiff's waiver argument fails.

Even if estoppel (as applied here) could be viewed as an affirmative defense, the Court may still "exercise its discretion to allow a late affirmative defense if the plaintiff does not suffer prejudice from the delay." *Burton v. Ghosh*, 961 F.3d 960, 965

11

(7th Cir. 2020). Plaintiff would not be prejudiced by allowing Defendant's late assertion of collateral estoppel. First, Plaintiff was not deprived of the opportunity to conduct necessary discovery for defeating Defendant's collateral estoppel defense; the relevant facts for collateral estoppel are clearly present in the record, and it is not apparent how Plaintiff could benefit from further discovery. *Cf. Reed v. Columbia St. Mary's Hospital*, 915 F.3d 473, 480 (7th Cir. 2019) (district court abused its discretion by allowing late religious exemption defense because plaintiff "needed to spend the time and money to conduct full-bore discovery" to defeat the defense). Moreover, Defendant asserted collateral estoppel in its summary judgment opening brief, so Plaintiff had the opportunity to respond on the merits. *Cf. Venters v. City of Delphi*, 123 F.3d 956, 968–69 (7th Cir. 1997) (district court abused its discretion in allowing statute of limitations defense asserted for the first time in defendant's summary judgment reply brief). Because Plaintiff is not prejudiced by Defendant's late-asserted defense, the Court rejects Plaintiff's waiver argument and holds that Plaintiff is estopped to contest the inappropriate touching.[5]

---

[5] Even if Defendant's collateral estoppel defense was waived, the Court could, and would, take judicial notice of the arbitration judgment. Courts may take judicial notice of matters of public record, *Deicher v. City of Evansville*, 545 F.3d 537, 541–42 (7th Cir. 2008), and of arbitral decisions, *Consol. Coal v. United Mine Workers*, 213 F.3d 404, 407 (7th Cir. 2000). It is an uncontested fact—one about which the Court takes judicial notice—that Johnson won her civil battery claim against Plaintiff and that the Circuit Court of Cook County entered the mandatory arbitration judgment against Plaintiff. (Dkt. 89 at 16.) Although the arbitrator's battery finding is not entitled to "complete deference," the Court may properly accord "great weight" to the arbitrator's decision when ruling on Plaintiff's Title VII claim. *See Darden v. Illinois Bell Telephone Co.*, 797 F.2d 497, 503–04 (7th Cir. 1986) (citing *Alexander v. Gardner Denver*, 415 U.S. 36 (1974)). Because Plaintiff has presented no evidence, other than his own declaration, to support his version of events, and because the arbitrator's decision is entitled to "great weight," there is no genuine dispute of material fact regarding the inappropriate touching.

Plaintiff's inappropriate touching of Johnson is thus treated as an uncontroverted fact. As a result, the Court must look to the remainder of the record for evidence of pretext. But there is a dearth of such evidence. By the time Plaintiff was fired, Johnson had kept multiple contemporaneous notes raising performance concerns regarding attendance and general diligence, and she had elevated those concerns to Roche. (Dkt. 89 at 3–4.) Further, Johnson recorded a complaint from the legislature about Plaintiff's inappropriate behavior with some of its female employees. (*Id.* at 4.) These performance issues were all noted even before the inappropriate touching incident that directly preceded Plaintiff's termination. (*Id.* at 3)

Plaintiff's pretext argument is also undermined by the timing of his termination. An adverse employment action occurring shortly after an employee engages in protected activity may provide evidence of discriminatory intent. *See Coleman*, 667 F.3d at 860–61 (finding adverse employment actions occurring weeks after employee filed "informal complaints of race and sex discrimination" to be relevant circumstantial evidence). Plaintiff did not, however, engage in *any* protected activity before he was terminated by Defendant; rather, he was terminated shortly after the inappropriate touching incident. This undisputed fact strongly suggests Plaintiff was fired for an entirely legitimate reason.

Plaintiff contends that Defendant gave shifting responses when explaining its rationale for terminating Plaintiff's employment. (Dkt. 100 at 14.) Indeed, when "decisionmakers' stated rationales are 'sufficiently inconsistent or otherwise suspect,' a summary judgment cannot stand." *Bagwe*, 811 F.3d at 881 (quoting *Hitchcock v.*

13

*Angel Corps, Inc.*, 718 F.3d 733, 738 (7th Cir. 2013)). But to reach that level of inconsistency, the explanations "must actually be shifting and inconsistent to permit an inference of mendacity." *Id.* (quoting *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003)). That mendacity cannot be found if the "decisionmakers' explanations" are "supported by the record." *Id.*

Plaintiff offers little support for his contention that the Defendant's rationale has impermissibly shifted. Plaintiff asserts in his response to Defendant's summary judgment motion that he was first told he was fired for poor performance but later told that he was fired for sexual harassment. (Dkt. 100 at 14.) In his response to Defendant's Rule 56 statement of facts, however, Plaintiff does not deny that he was told at his termination hearing that the inappropriate touching played a role in his termination. (Dkt. 101 ¶¶ 49–50.) Accordingly, the Court holds that Defendant's reasons were sufficiently firm and "supported by the record" to preclude a finding of pretext. *Bagwe*, 811 F.3d at 881.[6]

After examining all the relevant evidence, the Court finds that no reasonable factfinder could conclude Defendant terminated Plaintiff because of his race.

---

[6] Plaintiff's remaining pretext arguments fail. That Johnson drove home from Springfield with Plaintiff and waited a month to report the inappropriate touching does not, by itself, undermine the established fact that the inappropriate touching occurred and that it violated Defendant's sexual harassment policy. Plaintiff's contention that Defendant failed to "investigate" the incident prior to firing him is also contradicted by the record. Johnson testified that the term "investigation" under Defendant's sexual harassment policy "means to ask questions, determine facts." (Dkt. 108 ¶ 30.) Johnson further testified that she wrote a report of the touching incident; escalated the complaint to Roche and Defendant's counsel; and the group met with Plaintiff during the termination hearing to ask him questions about what happened. (*Id.* ¶ 32.)

14

Accordingly, Plaintiff's Title VII claim fails, and summary judgment is granted for Defendant.[7]

## IV.  CONCLUSION

For the reasons provided above, Defendant's motion for summary judgment (Dkt. 88) is granted.

---

[7] Plaintiff objects that Defendant's briefing fails to comply with Local Rule 7.1 and Local Rule 56.1 of the Northern District of Illinois. The Seventh Circuit has, however, "consistently and repeatedly" reinforced a district court's discretion concerning compliance with its own local rules. *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000). Under Local Rule 7.1, briefs are limited to 15 pages unless the Court approves additional pages. Because Defendant did not seek approval in advance to file its 23-page opening brief, Plaintiff "moves to strike Defendant's brief or, in the alternative, to ignore everything beyond page 15." (Dkt. 100, at 2–3.) Plaintiff, however, was able to respond fully to Defendant's arguments, and the Court did not previously warn the parties that it would strike oversized briefs. Because striking Defendant's opening brief would amount to a disproportionate remedy under these circumstances, the Court declines Plaintiff's request. *Moore v. Hunt*, 2015 WL 5008265, at *8 n.2 (E.D. Wis. Aug. 20, 2015). In any event, Defendant adequately raised its collateral estoppel argument regarding the inappropriate touching within the first 15 pages of its brief. (Dkt. 89, at 15.) As explained above, the Court credits that argument, meaning there is no genuine dispute of material fact to preclude summary judgment even if the Court were to strike the excess pages.

Local Rule 56.1 controls the presentation of evidence at the summary judgment stage. Local Rule 56.1(a) requires the moving party to file a supporting memorandum of law and a statement of material facts. The memorandum of law, "[w]hen addressing facts, . . . must cite directly to specific paragraphs in the LR 56.1 statements or responses." LR 56.1(g). Defendant's memorandum, however, "cites to the underlying parts of the record and not to its LR 56.1 statement," so Plaintiff requests that the Court disregard the facts set forth in Defendant's memorandum. (Dkt. 100, at 3.) The Court has, however, substantially relied on Plaintiff's Rule 56 statement (Dkt. 102) and Plaintiff's response to Defendants Rule 56 statement (Dkt. 101) in considering Defendant's motion for summary judgment. Moreover, the ultimate purpose of Rule 56 is "to make the summary judgment process less burdensome on district courts." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012). Although the Court relied on some record citations contained in Defendant's memorandum (as opposed to a Local Rule 56.1 statement), the burden of confirming that no genuine factual disputes exist was comparatively light because Defendant provided precise citations to record evidence. Accordingly, although it does not condone Defendant's lack of compliance with Local Rule 56.1, the Court, in its discretion, declines Plaintiff's request that it disregard the facts set forth in Defendant's memorandum.

SO ORDERED in No. 18-cv-00552.

Date: January 27, 2023

                                                JOHN F. KNESS
                                                United States District Judge